Judge Mills
delivered the Opinion of the Court.
James Edmondson being entitled to two thousand acres of land, in Fleming county, came from Virginia, with his son-in-law, Benjamin Mosby, and both settled their families on the tract, and not long afterwards Edmondson laid off to Mosby, by actual survey, five hundred acres of the tract, by metes and bounds. On the tract there were some settlers, who had made improvements, and these improvements were purchased by Edmondson and Mosby, Mosby paying for the improvements existing on his 500 acres. Both continued to reside on their respective parts, and Mosby added large and valuable improvements by reducing more of the land to a state of cultivation, and he erected a distillery and procured the necessary apparatus, and also built a horse mill. After several years residence of both, Mosby sold his 500 acres to Payne and Anderson, including his distillery with all its necessary implements, and his horse mill, and gave them a bond obliging himself to make to them a conveyance with general warranty, and promising them that his father-in-law, Edmond-son, should unite with him in that bond, and it was drawn suited for his signature. Payne and Anderson, on their part, was to pay for said land, distillery and mill, fifteen thousand gallons of whiskey, in four, equal annual instalments of 3,750 gallons each, and executed a separate note for each of thesé in-stalments accordingly. Mosby assigned the first of *381 these notes to Thomas Wallace, who, on the failure of Payne and Anderson to pay it, when it became due, brought suit thereon and recovered a judgment in damages. Of this judgment Payne and Anderson paid $1,000, leaving a balance due; they also paid to Mosby before that, 500 gallons of whiskey, on one of the other notes.
Bill by Payne junction and effectuation or rescission tract.8 C°^
Answer of the orossbilU ga°nst Éd-' mondson; interrogatories p“ainantsañd Edmondson,
Mosby died, and after his death Payne and Anderson filed this bill inequity, enjoining the balance of the judgment due to Wallace, and making Wallace, Edmondson, Mosby’s administrators and heirs parties, and state, as the equity on which they rely, that Mosby had no title to the land, either legal or equitable; and that Edmondson had the title, and that since the death of Mosby, Edmondson had refused to sign or execute the bond to them, or to make a conveyance, and insisted that Mosby had no title. They pray that if the title can be obtained, the contract may be effectuated, but if not, that they may have relief, not only against the judgment of Wallace, but also against the other notes held by Mosby’s administrator, and a return of the money which they have paid.
- Wallace and the administrator and heirs of Mos-by answered the bill, and charge that the aforesaid improvements and distillery, and mill, were Mos-by’s, and not the property of Edmondson, even if Edmondson owns the title, and that the rents of them were worth something considerable. They further charge that Payne and Anderson, about one year after filing their bill, had bought the land from Edmondson at the same price at which they were to have it from Mosby, except that Edmondson had deducted out of the price the ‡1,000 paid to Wallace, and ‡250 for the whiskey paid to Mosby on the ensuing instalments, and that Edmondson had conveyed them their land, and taken from them a mortgage to secure the purchase money to himself, and exhibit the conveyance to Payne and Anderson, and the mortgage for the purchase money, proving these allegations, and they call upon the complainants to answer to the truth thereof. They farther put interrogatories in their answer to Edmondson, *382 and charge that Edmondson had given writings to Mosby, binding himself to convey the land; that jijc{mon(json settled him on the land, and residing on the same tract, knew of Mosby’s expending his labor ancl money largely in improvements, ana encouraged it; that Edmondson knew of Mosby’s sale to the complainants Payne and Anderson, and was pleased with it; that on Mosby’s death, he died without children and his brothers and sisters became his heirs at law; that his papers, on his death, all fell into tire possession of Edmondson, who then formed the intention of withdrawing this fund from the estate of Mosby, and of saving it for his daughter the widow of Mosby, and accordingly he had destroyed or secreted in his possession, the writing which he had given ¡to Mosby, stipulating to convey this land, and they pray that he may be compelled to convey it, or rather as h« has conveyed it to the complainants, that they, the complainants, may be compelled to accept the warranty of the heirs of Mosby. These} in substance, are the charges made against Edmondson and the complainants, in the three separate answers of Wallace, Mos-by’s administrator and Mosby’s heirs.

Process.

Answer of Edmondson drawn, and amended bill to obtain the admission,ltS iiot success-fui-
The process on the bill, as well as the process on the answers of Wallace and Mosby’s heirs, was executed on Edmondson; the process issued on the answer of Mosby’s administrator, was not served on him.
Edmondson answered the hill. But what was contained in that answer we do not know; for the cier]c certifies that it is lost or withdrawn from the record. Wallace, after the loss of this answer, filed an amended answer in the nature of a bill against Edmondson, and charges that his answer contained important admissions, in favor of Mosby’s right to sell the land; that Edmondson had withdrawn it after his sale to the complainants, and still retains it, and prays that he may be compelled to restore it or file another of the sanie nature, and to answer all the charges against him. The process on this a* mended answer was served upon Edmondson, but yet he remained silent till the trial of the cause.
Complain - arts .-nswtr to defendants interrogatories.
Decree of the circuit court.
Form of a decree for the specific execution of a contract where the conveyance is not to be made till the money is paid — the court must see all done.
One of tbe complainants answer, admitting their purchase from Edmondson, and insisting that they did it to save the land, and under a conviction that Mosby had not, and Edmondson had the right to the land, and rely on their holding it under Edmond-son’s contract. Mosby’s administrator brought suit on one of the notes for another instalment. By an amended bill this was enjoined pending this suit, and all was heard together.
The court below, as the process on the answer .of the administrator of Mosby was not executed, decided that it could not give any decree in favor of the administrator against Edmondson; but decreed that as the complainants had already possessed themselves of the title from Edmondson, all they lacked was the warranty of Mosby’s heirs, which was decreed to them, with a release of such title as Mos-by held; that the injunctions should both be dissolved and the bill be dismissed without prejudice as to any claim the complainants might have to set aside the contract between them and Edmondson, and that the complainants should pay both damages and costs to all except Edmondson; that if the heirs of Mosby should not convey with warranty, a commissioner should do so, as soon as the purchase mopey was paid.
The decree in its details cannot be approved by this court. A commissioner ought not to have been appointed to convey lohtn the purchase money was paid, and the commissioner left as the sole judge of that payment, a matter proper only for the court itself. The court ought, therefore, to have reserved its power over the decree, so that if the complainants should, thereafter, in any appropriate mode, show that the money was paid, then a conveyance should be coerced from the heirs, or a commissioner be appointed to make the conveyance. For there is no propriety in the chancellor delegating to a commissioner the settling of the proper time for making the conveyance. The time when the conveyance is to be made is proper for the decision of the court alone. The time here fixed is on the payment of the money, and that is an important condi *384 tion, on the correct fulfilment of which the court ought to decide.
Vendor's Hen in such case ought not to be lost.
Where there were grounds for the injunction, when obtained, which are removed pending -the suit, no damages shall be given — Causes for the injunction stat-
Statem.ent of the points of controversy.
On the supposition that the complainants ought to be compelled to accept the warranty of Mosby’s heirs in addition to the title which they have have got from Edmondson, the court was correct in seeing to. the previous payment of the money first. The title bond of Mosby is lost as stated in the bill, and the bill does not inform' us when the conveyance was to be made. One of the subscribing witnesses proves that the title was to be made at some future period, but does not state when. As there was no personal security for the price, Mosby was entitled to his lien upon the land for that price, and the court, on failure of payment, ought to reserve also the right q£ Mosby’s representatives to enforce that lien.
It was also incorrect in the court below to decree damages against the complainants on the dissolution of the injunction, and also full costs. They had grounds for the injunctions when obtained- They had lost their title bond on Mosby, and they jmew of no connexion of title between Mosby and Ed-mondson, whereby they could compel Edmondson to convey, and it is in proof that the bond given them by Mosby, had Edmondson’s name therein, and was to be executed by him, which Mosby during his life failed to procure. It was, therefore, erroneous to decree all costs, and any damages against them,
But we need not detain on the details of the decree, as therg are still.greater difficulties to encounter, and these difficulties are increased by the conduct of the complainants in purchasing (he title from Edmondson pendingthe suit. The bill charges that there was no writing from Edmondson to Mosby, except some parol gifts which could not be enforced, and prays that if the title can be had, a conveyance may be made, and if not, a rescission of the contract. All this Edmondson does not controvert, arid as between him and the complainants, it is settled that Mosby has no title. Proceeding on this supposition, they, during the contest, purchased from *385 Edmónds'on the title, and went on tó take his conveyance, and to mortgage the land to him. The proposition made by the heirs of Mosby, is? that as the complainants have obtained the title from Ed-mondson, they may be compelled to accept their release such with warranty, or assurance as Mosby was to give, and thus effectuate the coittract, or if that cannot be done, that the contract may be set aside, and the premises be conveyed to them by Edmondson, and surrendered by the complainant, with an account of rents and profits.' The main struggle on the part of the complainants by the assignment of error, is to set aside One of those contracts made by them, either that first made with Mosby, or that with Edmondson, and not leave them to the mercy of both.
Contract between Ed-mondson and complainants.
It may seem a severe decision that leaves them under the pressure of both, and hence we have turned our attention to each.
We are convinced that we cannot, in form, set aside the contract with Edmondson. At the time their bill was filed tiffs contract did not exist; of course, neither the billd>r amended bill makes any mention of it. The defendants disclose it in their answers, exhibit the evidences of it, and call on Ed-mondson and the complainants to say whether it be true. Edmondson and one of the complainants are silent, the other complainant responds, acknowledging the fact and praying the same relief as asked in his original and amended bills, which is a title, from Mosby’s representatives, if to be had, and if not, a rescission of the contract. But in no part of the pleadings do they attack or express the least wish to set aside this contract with Edmondson.
They do not complain of it; no issue is made up between them and Edmondson about it, and therefore it cannot be entirely set aside. When it is attacked, Edmondson may show in defence what we now cannot know. It must, therefore, be dismissed from our consideration, except so far as shall be necessary to do justice to the contract of Mosby, in handling which, it may be necessary to shake the pillow of the contract with Edmondson. For the *386 present, therefore, we shall leave the contract with Edmondson and turn our attention to the contract with -.Mosby.
Case of the contract between Ed-mondson and Mosby, as presented on the pleadings between the complainants, Payne and Anderson and Mosby’s representatives.
Case presented on the pleadings between Mos-by’s repre-resentaties and Edmond-son.
If this contract is to be considered, as it appears on the pleadings between the complainants and Ed-mondson, there would be but little difficulty in setting it aside. If it must be taken as true that Edmondson had given no writing to Mosby, nothing further than some parol gift or understanding between them, and Mosby was in default in the contract, in not procuring the signature of Edmond-son to the contract, which he had promised them to-obtain; but in this negligence the complainants participated, for they never applied to him for his signature, although they saw him often, till after Mosby’s death, at which hour Edmondson, tempted by the opportunity of withdrawing this estate from the grasp both of Mosby’s creditors and brothers and sisters, and saving it for his daughter, refused his signature.
But when this contract is viewed in the attitude it is presented between the complainants and Mosby’s representatives, and between said representatives and Edmondson, it presents a different aspect. The representatives of Mosby are far from admitting that Mosby had no written title from Edmondson; they prove that the sale of Mosby had received Edmondson’s cordial approbation; and they charge Edmondson with possessing himself of Mosby’s papers after his death, and secreting and retaining the evidences of title, given by him to Mosby, and call for a production of this evidence. Edmondson is silent to all this, and suffers it to be confessed—to be taken as true. The point then must be considered as settled between Edmondson and Mosby’s heirs, that this land was Mosby’s; that Edmondson had given to Mosby sufficient evidence to compel him to convey it; and that Edmondson, instead of conveying it, under a contract of sale to the complainants, ought to have conveyed it to Mosby’s heirs, to be conveyed by them to the complainants in discharge of Mosby's contract.
Consequence which would foí*°.w a re~ contract be-' twoen comP|ai"ant!) anci-os 5‘
Prayer of the bill being for the land, if in the power of defendants, and to set aside the contract, only in case the land could not be had, the contract cannot be rescinded, if it appear the land can be obtained, though the bill charges it was out of the defendant’s power.
Vendee, pending his bill for a conveyance, if to be had, otherwise a rescission, apprehending vendor had no valid
Mosby’s representatives then stand in this sitúation: they are entitled to a conveyance of the land. If it is decreed to them, they are ready to convey it, at the same moment to the complainants. If then the contract between the complainants and Mosbv is set aside, what are the consequences which must follow? 1 hey will or may be more ruinous to the complainants than any other event. They must account for all the rents and profits during their occupancy, and receive twelve hundred and fifty dollars which they have paid, with interest, and not only surrender the possession, and account for the distilling apparatus, but must convey to Mosby’s representatives the title which they have gotten. This is the most favorable attitude in which the chancellor could place them, if the contract is set aside, and we have had some hesitation in not bringing them to this point.
But there is one consideration which has led us to a different conclusion. We should be giving to them relief which they have not asked. The whole frame of their original as well as amended bill, and the prayer thereof expresses this desire: “Grant us the land if it can be had, and effectuate the contract, and only in case we cannot get the land set aside the contract.” By tin's choice of the complainant we are governed. The contract can be effectuated; they can get the land, as Mosby’s representatives have abundantly shown. They are in possession, and they have got the title through a contract with Edmondson, it is true; but it ought to have been by a conveyance of Edmondson, in discharge of Mos-by’s contract.
But as Edmondson has embarrassed the title by a sale to the complainants with general warranty, and has taken a mortgage of the same land to secure to him the purchase money, which again vested in him the legal estate, leaving with the complainants the equity of redemption, it cannot be right, as the court below has done, to decree that Mosby’s heirs should execute a warranty for the land, and at the same time leave Edmondson in possession of the legal estate, by virtue of which he might evict the *388 complainants, and by (bat eviction lay Mosby’s heirs liable to the very warranty which the decree has directed them to execute. Before they are bound to warrant to the complainants the same title ought to be taken from the hands of others, so that they shall be in no danger of eviction, except from other claims. The complainants, therefore, must be compelled by a decree to convey and release their equity of redemption to Edmondson, by deed with special warranty, against their own acts and all claiming under them. Edmondson must then be compelled to convey all his title to Mosby’s heirs by deed of special warranty against his own acts and all claiming under him.
contract for the title, purchased from the holder of le litlej and executed a mortgage fp.r the purchase money, hut the defend ant, vendor, shewed his right to a conveyance: ordered that complainant release his equity of re, (lemption, and then thp holder of the title convey to his vendee, and he convey to the com-' plainant.
Vendor’s lien for the pur-chaso money.
Vendee’s lion tor his ad- ' V6sse8sionillS i ■ • ’
Decrees for conveyance, chase6 Pon" c se money.
Case of com-pamant with 1 mon son.
Mosby’s representatives will then be in a proper attitude either to convey with warranty, or to have the benefit of a well known doctrine in equity, that a vendor has a lien for his purchase money, when he has taken no other security, as was the case with Moseby here.
The complainants also, as purchasers having the possession, will also have that lien which equity gives to a purchaser, as security for the money he has paid.
Mosby’s representatives or heirs must then be t]ecree(] ¡-0 conVey to the complainants, by deed with general warranty, . so far as their assets descended extend, so soon as the price isjpaid, and the determining on that payment, and when it is made, must be reserved for'the decision of the court, as well as the right of the heirs and administrator of jyjosby, to enforce their lien in case of failure.
This is as favorable a standing as we can give to compjajnan|;Si y/e cannot go into the payments which they Lave made or are bound to make to Edmondson; that part of the subject they have not brought before us, but in favor of Mosby’s representatives we Can direct that both they and Ed-mondson, shall surrender the title which they have bought and he professed to sell. But they will, by their suit, be relieved against the loss of their bond and remove, the difficulties, out of the way. of Mos-by’s heirs.
Costs.
ifib sent, Chief Justice Bibb.
Crittenden and Brown, fc?r plaintiffs; Wickliffe, for defendant.
As tbey liave embarrassed the cause during its pendency, by their contract with Edmondson, they ought not to recover their costs in the court below, of any but Edmondson. But Mosby’s heirs and Wallace will be entitled to recover from Edmond-son all their costs in that court.
Decree reversed with costs, and cause remanded with directions to enter such decree, and have such further proceedings as may conform to this opinion and the rules of equity.